COPE, Judge.
Rolando Redo appeals an order of the Florida Unemployment Appeals Commission which affirmed the denial of unemployment compensation benefits. We conclude that there must be a new hearing and reverse.
The main dispute aired at the hearing before the referee was whether claimant-appellant Recio had suffered a reduction in pay which justified his decision to quit his employment with appellee Kent Security Services, Inc.
Claimant began work with Kent Security as a chief of security in 1986. He was assigned to a condominium where Kent paid him $7.70 per hour and the customer paid an additional $200 per week. The customer paid Kent the $200 per week subsidy. Kent would add the subsidy to claimant’s hourly wages and issue a paycheck to claimant.
In 1992, claimant had a disagreement of some kind with the customer. Consequently the customer asked that Kent replace claimant with someone else. Kent did so, and reassigned claimant to a new location. At the new location, claimant did not receive a subsidy. His only pay was $7.70 per hour.
Claimant resigned in 1994. Claimant’s position was that Kent had promised to obtain another assignment for him at higher pay. He says that those assurances were not kept, and that on his final assignment he was told that the pay would be reduced to $6.50 per hour, so he quit.
The employer’s witness testified that Kent had placed claimant in several positions paying $7.70 per hour from 1992 onward. The employer testified that the claimant expressed dissatisfaction with the various assignments they gave him, and that he did not complain about the pay. The employer denied that the final assignment offered to the claimant was at $5.50 instead of $7.70 per hour.
The appeals referee took the position that the claimant had not received a wage reduction in 1992 when he was reassigned from the condominium and lost his subsidy. The referee reasoned that the claimant’s actual pay from Kent was $7.70 per hour, and that the supplement paid by the condominium didn’t count. We cannot agree.
*166 In this case the employer testified that the condominium paid the $200 per week supplement to Kent, and Kent in turn paid claimant a total compensation of $7.70 per hour plus the supplement. Clearly claimant’s compensation consisted of both elements, the $7.70 per hour plus the supplement.
When claimant was reassigned, he lost the supplement. His compensation was therefore reduced by $200 per week, a substantial amount. The referee committed legal error by excluding the supplement from the computation of claimant’s pay for the period through 1992.
Once the referee erroneously decided that there had never been a reduction in pay, the referee necessarily went on to reject the claimant’s testimony that his decision to leave had anything to do with a reduction in pay. As we view the referee’s order, the referee never considered claimant’s actual argument, which was that he continued working for Kent at the lower rate of pay because of assurances that Kent would locate a better-paying assignment for him. The referee’s order also did not make a specific finding regarding the rate of pay claimant was offered in his final assignment. Claimant testified that his pay was to be further reduced to $5.50 per hour while the employer testified the pay rate would remain at $7.70 per hour.
We also conclude that the interests of fairness require a new hearing. The referee made the following finding: “The claimant’s elusive and evasive answers as to what rate he was paid by the employer further undermine his credibility.” We do not think that the referee’s statement on this point is a fair characterization of the claimant’s testimony.
Claimant brought his original pay records with him to the hearing, but no copies. Con-cededly in doing so claimant had not followed the instructions in the Commission’s pre-hearing brochure which states that a claimant “should bring the original and two copies of all documents which will support your position....”
At the hearing claimant attempted to testify about his total hourly rate of pay including the amount paid by Kent and the supplement paid by the customer. He testified that the hourly rate would fluctuate somewhat from month to month, apparently because the supplement was paid on a flat weekly basis, but Kent paid on an hourly basis. Claimant also testified that his pay had increased during the six years that he worked at the condominium.
Claimant repeatedly stated that he had all of his pay records with him and that the exact hourly amounts could ascertained by examining the pay records. When claimant attempted to offer the pay records into evidence, the referee stated that if he did so the documents would become state property and claimant could not get them back. After an extended colloquy about the pay records, claimant did not offer them into evidence because he did not have copies of them.
Although rebuffed, claimant also tried to elicit his pay information from the representative of Kent Security who was attending the hearing. The referee would not allow this, even though claimant was entitled to call the Kent Security representative as a witness if he chose to do so. Claimant also asked the referee to review the records without their being submitted into evidence, which the referee did at least briefly.
The record simply does not support the referee’s statement that the claimant’s answers to questions about his pay rate were “elusive and evasive.” To the contrary, claimant brought his pay records to the hearing and attempted to offer them into evidence until discouraged by the referee from doing so. Claimant nonetheless persisted in trying to have the referee review the pay records, and also attempted to question Kent Security regarding his pay rate, which claimant had a right to do. When the claimant is attempting to adduce evidence of his pay based on his actual pay records, we failed to see how that can be fairly characterized as being either elusive or evasive. In the interest of fairness, there must be another hearing.
Because the issue may arise again, we address the advice that the referee gave to claimant that his pay records, once submitted into evidence, would become state property and, “You don’t get it back.” The referee’s statement was correct, but incomplete.
It was proper for the referee to advise the claimant that if he submitted the original pay records, they would become part of the rec *167 ord and would not be returned to him. However, the referee should also have explained that the claimant has a right to obtain copies after the hearing under the public records law.[1] As portrayed by the referee, once the claimant handed over his original pay records he would never see them again. Under the circumstances, most claimants would be deterred from. offering their documents into evidence, if they had not brought copies with them. The truth of the matter, however, is that the claimant can offer the original documents into evidence and has an unqualified right, after the hearing, to obtain copies. Hearings should be conducted so as to encourage, rather than discourage, the submission of evidence.[2] Although it is certainly true that claimant should have come to the hearing with the necessary copies, upon his failure to do so the referee should have given an accurate depiction of his options.
The order under review is reversed and the cause remanded for a new hearing.

. Although the point is not before us, the “Appeal Information” brochure distributed to claimants suggests that the claimant may be entitled to obtain such copies without charge under paragraph 443.041(2)(a), Florida Statutes.

. Claimant also points out that the Commission's rules emphasize the importance of obtaining complete payroll records if necessary to the decision of the appeal. Florida Administrative Rule 38E5.021 provides: 38E-5.021 Investigation. Whenever it appears necessary for. disposition of an appeal, the appeals referee shall direct the Division to conduct an investigation, inquiry, payroll audit or other examination. Hearings on appeal shall be continued pending completion of the investigation. All parties shall be entitled to inspect, cross-examine and offer rebuttal to any evidence contained in a report of any investigation directed by the referee.