872 So.2d 966 (2004)
Gyuri GARCIA, Appellant,
v.
FLORIDA UNEMPLOYMENT APPEALS COMMISSION, etc., et al., Appellees.
No. 3D03-154.
District Court of Appeal of Florida, Third District.
April 21, 2004.
*967 Gyuri Garcia, in proper person.
John D. Maher, Tallahassee, for appellee, Commission.
Before SCHWARTZ, C.J., and COPE and SHEPHERD, JJ.
SHEPHERD, J.
This is an appeal of a decision denying claimant compensation benefits for misconduct based on alleged failure to adhere to employer's policy for cashing double endorsed checks. We reverse.
The claimant, Gyuri Garcia, was a teller supervisor of Total Bank, who had been employed by the Bank since 1996 and worked his way up the ranks. The Bank had a policy requiring that double endorsed business checks (those with two endorsements on the back) presented for deposit at the Bank have both a guarantee by another bank and the approval of the branch manager or an officer of a rank of vice-president or higher before acceptance for encashment. The claimant received training on processing double endorsed business checks and was well aware of the policy.
In August 2001, the claimant was presented a check in the amount of $14,697.50 for deposit into the corporate account of Bank customer, Ramirez Super Motors, Inc. (Ramirez Motors) by Jose Ramirez, a principal of the corporation. Ramirez Motors is an automobile dealership located in Miami-Dade County. The check was drawn upon the account of the American Diabetes Association and made payable to a Nigerian corporation. The check bore an apparent endorsement by the Nigerian corporation and was double endorsed to Ramirez Super Motors. Garcia accepted the check for deposit and encashment.
Unfortunately, the Nigerian endorsement was subsequently discovered to be a forgery and the Ramirez Motors account was briefly overdrawn. Nine months later, on May 3, 2003, after a brief investigation that began only days earlier, the Bank confronted Garcia and fired him for accepting the check in violation of bank policy. If it were true, this would have been *968 claimant's only policy violation of this nature.
Garcia applied for unemployment benefits, but was denied on the grounds of employee misconduct, by a determination[1] dated June 27, 2002. Garcia then sought an the evidentiary hearing before an appeals referee to review the determination.
Before the appeals referee, the Bank presented testimony from two witnesses, Bank Executive Vice President Barbara Hernandez and Robert Revilla, who was at the time of his testimony the branch manager of Garcia's former branch. However, neither of these witnesses had personal knowledge of the incident involving Garcia's acceptance of the subject check. Garcia, on the other hand, presented his own testimony and called two other witnesses with personal knowledge of the incident. Garcia testified that he did, in fact, obtain approval to accept the check from Bank Senior Vice President, Ambrosio Rodriguez, the officer in charge of the Ramirez Motors account, before cashing the check. To buttress his position, Garcia called Ramirez who testified that he had pre-cleared the deposit with Rodriguez before taking it to the Bank and even faxed a copy of the check to him. The testimony of Mary Pellerano, who was the manager of the branch at which Garcia worked at that time, provided circumstantial support for Garcia's position. Pellerano recalled the incident and testified that Ramirez complained loudly to her that Garcia was being a stickler about not accepting the check without proper authorization. Pellerano added that Garcia was "an excellent employee" and that she was "pretty sure" Garcia did get "an approval," and it was "sad to see a good employee like that lose his job over this." According to Garcia, the only inadvertence was his failure to note the verbal approval from Rodriguez on the check, purportedly because the Bank was short-handed during the lunch hour, and he wanted to act quickly. There was no competent testimony to dispute Garcia's position. Indeed, the Bank offered no direct testimony that Rodriguez' approval had not been garnered prior to encashment.[2] Nor did the Bank offer any explanation as to why it waited nine months before commencing an investigation of the incident.
Despite the fact that there was no evidence to controvert the testimony of Garcia and his corroborating witnesses that Garcia had acted properly, the appeals referee concluded that Garcia must have been guilty of misconduct since Rodriguez had not been called as a witness. Though the testimony of Mr. Ramirez that he had pre-cleared the check with Mr. Rodriguez and that of Ms. Pellerano about Garcia's refusal to the customer in her presence to cash the check without appropriate approval were perfectly consistent with Garcia's claim that he received approval from Rodriguez, the referee chose to believe that Garcia's evidence was self-serving. At the same time, the referee completely glossed over the fact that the bank chose to mysteriously investigate this matter and terminate *969 Garcia nine months after the Bank's acceptance of the forged check.
The Commission affirmed stating that it could not substitute its judgment for that of the appeals referee, nor could it accept additional evidence from claimant. The Commission also found that the referee's conclusion was a reasonable application of the pertinent law to the facts of the case that claimant's failure to follow employer's policy constituted a substantial disregard of the employer's interest tantamount to misconduct. We disagree.
On appellate review, the Commission's order, which adopted the decision of the appeals referee, is entitled to a presumption of legal correctness. See Sekinger v. Heritage Insurance, Inc., 718 So.2d 358 (Fla. 2d DCA 1998); Kelle v. D.H. Holmes Co., Ltd., 658 So.2d 1161 (Fla. 2d DCA 1995). To successfully challenge any finding of the appeals referee, the appellant must show that it is not supported by competent, substantial evidence in the record. See Ford v. Southeast Atlantic Corp., 588 So.2d 1039 (Fla. 1st DCA 1991); Perez v. State Dept. of Labor and Employment Sec. Appeals Comm'n, 377 So.2d 806 (Fla. 3d DCA 1979); Fla. Stat. §§ 120.57(1)(e)(l)(f) and 120.68(7)(b) (2003). The appellant-claimant here has demonstrated reversible error.
The Florida Unemployment Compensation Statute defines "misconduct" as follows:
"Misconduct" includes, but is not limited to, the following, which shall not be construed in pari materia with each other:
(a) Conduct evincing such willful or wanton disregard of an employer's interests as is found in deliberate violation or disregard of standards of behavior which the employer had a right to expect of his employee; or
(b) Carelessness or negligence of such a degree or recurrence as to manifest culpability, wrongful intent, or evil design or to show an intentional and substantial disregard of the employer's interests or of the employee's duties and obligations to his employer.
§ 443.036(29), Fla. Stat. (2003).
In interpreting this statute in a similar circumstance, we have reversed a referee and found for the claimant. See Menendez v. River Orchids Inv. Corp., 653 So.2d 470 (Fla. 3d DCA 1995) (where employee was absent from work to care for her daughter without proper notification to an executive, but had spoken with the executive assistant, referee erred by finding claimant misconduct).
We find that there was no misconduct on the part of Garcia. He claims that he did speak with Rodriguez to get approval per the bank policy. Ramirez' testimony ratifies Claimant's version of the story. The employer has produced no evidence to contradict same. Thus, we find that Garcia actually followed his employer's policy on double endorsed checks, and therefore, was not guilty of misconduct. Nothing in the record sub judice supports the referee's conclusion that Garcia's testimony and evidence were self-serving. See Recio v. Kent Security Services, Inc., 683 So.2d 164 (Fla. 3d DCA 1996) (record did not support referee's statement that claimant's answers to questions were "elusive and evasive").
Even if Garcia should have been more wary of this double endorsed check, his acceptance was an error in judgment, not an intentional disregard of his employer's interest, especially since the record supports claimant's defense that he received Rodriguez' blessing. Where the employee's downfall is the result of an *970 error in judgment as opposed to intentional disregard of duties and obligations, there is no misconduct. See Bigler v. Florida Unemployment Appeals Comm'n, 841 So.2d 610 (Fla. 3d DCA 2003) (no misconduct where employee gave store merchandise, a "tester," to employees of another business in appreciation of services provided to the store); Bates v. Unemployment Appeals Comm'n, 655 So.2d 1242 (Fla. 2d DCA 1995) (referee erred in concluding that claimant's failure to call in sick on a daily basis constituted misconduct connected to work, when employee had already called in at the start of the week).
Lastly, the fact that this was Garcia's one blunder over a six year career weighs in favor of finding that the claimant was not one to wilfully and wantonly disregard his employer's interests. Where employee's conduct is an isolated incident in an otherwise immaculate work performance record, finding misconduct is rare. Lamb v. Unemployment Appeals Comm'n, 424 So.2d 197 (Fla. 5th DCA 1983).
The order of the Unemployment Appeals Commission affirming the appeals referee's denial of unemployment benefits is reversed, and the case is remanded with directions for the Commission to award claimant full benefits.
Reversed and remanded with instructions.
NOTES
[1] Unemployment benefit claims are administered by the state's Agency for Workforce Innovation. A "determination" is the first level decision that a claimant receives to an application for benefits. If a claimant is dissatisfied with the determination, he or she can appeal to an appeals referee appointed by the agency and thence to a three member Unemployment Appeals Commission. Fla. Stat. § 443.151(3) and (4).
[2] Neither party called Ambrosio Rodriguez as a witness. Garcia indicated that he did not subpoena Rodriguez because he understood that he could only subpoena non-party witnesses and that the Bank was therefore responsible for bringing Rodriguez to the hearing.